JAHNA LINDEMUTH
ATTORNEY GENERAL

SEAN P. LYNCH
ASSISTANT ATTORNEY GENERAL
Office of the Attorney General
P.O. Box 110300
Juneau, Alaska 99811-0300
Ph: (907) 465-3600
sean.lynch@alaska.gov
Attorneys for the State of Alaska

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| STATE OF ALASKA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:16-cv-00018-SLG |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES FOREST SERVICE | ) | **COMPLAINT FOR** |
| and BETH PENDLETON, in her | ) | **DECLARATORY AND** |
| official capacity as Regional Forester, | ) | **INJUNCTIVE RELIEF** |
| | ) | (5 U.S.C. § 702) |
| Defendants. | ) | |
| | ) | |

The plaintiff State of Alaska ("the State") brings this complaint against the

defendants United State Forest Service ("the Forest Service") and Beth Pendleton, in

her official capacity as the Forest Service's Regional Forester, seeking a judgment

declaring the State's right to use a transportation and utility easement granted by

Congress under Section 4407 of the Safe, Accountable, Flexible, Efficient

Transportation Equity Act: A Legacy for Users, Public Law 109-59 (119 Stat. 1144,

1777) as amended by Public Law 114-94 (129 Stat. 1312, 1438) ("SAFETEA-LU

§ 4407") for the State's Shelter Cove Road project.  The State also seeks injunctive

ATTORNEY GENERAL, STATE OF ALASKA
Dimond Courthouse
PO Box 110300, JUNEAU, ALASKA 99811
PHONE (907) 465-3600

relief compelling defendant Beth Pendleton to issue recordable documentation of the congressionally granted easement for the project ("the Section 4407 easement"). This action challenges the defendants' decision to deny the issuance of the Section 4407 easement for the construction and operation of the State's Shelter Cove Road, as the defendants' decision to issue a Special Use Permit in lieu of issuing recordable documentation of the Section 4407 easement is a final agency action that violates a statutory right of the State and the terms of the congressional grant.

## JURISDICTION AND VENUE

1.     The cause of action arises under the laws of the United States and the Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 1331, 1361 and 2201. Judicial review is available under the Administrative Procedure Act, 5 U.S.C. §§ 701-706.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e).

## PARTIES

3.     The plaintiff, State of Alaska, is a state government. The State of Alaska's Department of Transportation and Public Facilities ("AKDOT") is an executive agency of the State of Alaska and is the owner and developer of the Shelter Cove Road project.

4.     The full name of the defendant Forest Service is the United States Department of Agriculture, Forest Service. It is an executive agency of the United States entrusted with the administration of the National Forest System, including the Tongass National Forest.

*SOA v. USFS and Beth Pendleton*                                    1:16-cv-00018-SLG
COMPLAINT                                                            Page 2 of 36
Case 1:16-cv-00018-RRB   Document 1   Filed 12/13/16   Page 2 of 36

5.     The defendant Beth Pendleton is the Regional Forester for the Forest Service's Alaska Region.  The Alaska Region Regional Forester is the designated official for signing and issuing the recordable documentation of the Section 4407 transportation and utility easements.

**FACTS**

6.     On March 24, 2014 the Forest Service announced a new interpretation of the scope and requirements of the Section 4407 transportation and utility easements that would make development of the State's projects nearly impossible.  The Forest Service's announcement came a full a decade after the Parties began working on the exchange of easements to enable the Shelter Cove Road project, and two full years after the Parties confirmed their common understanding of the scope and requirements of the Section 4407 easements.  The Forest Service's final refusal to issue a Section 4407 easement for the project occurred just one month after a congressional committee considered the matter and passed a bill clarifying SAFETEA-LU § 4407, and occurred a mere two days after that same committee issued a report stating the intent of the amendment was to allow the transfer of Section 4407 easements without further delay.

7.     Relying on the Forest Service's assurances of a future transfer of a Section 4407 easement, the State spent millions of dollars in additional public funds to acquire non-federal land to avoid sensitive National Forest System resources and to site the road in a location with the least environmental impact.

8.     Under the Forest Service's new interpretation of the scope and requirements of the Section 4407 transportation and utility easements, the State would

*SOA v. USFS and Beth Pendleton*
COMPLAINT

1:16-cv-00018-SLG
Page 3 of 36

ATTORNEY GENERAL, STATE OF ALASKA
Dimond Courthouse
PO Box 110300, JUNEAU, ALASKA 99811
PHONE (907) 465-3600

1    only be eligible to receive documentation of the congressionally granted easement for

2    the project if the State sited the road in the location with the greatest environmental

3    impact and that carried the greatest construction risks.

4
                    **SAFETEA-LU SECTION 4407 EASEMENT EXCHANGE**
5

6        9.      On August 10, 2005, with the passage of SAFETEA-LU § 4407, the

7    United States and the State of Alaska consummated an exchange of easements across

8    their intermingled lands in Southeast Alaska.

9        10.     As part of the reciprocal exchange of easements, the United States

10   received easement rights for 231 federal-owned facilities—docks, floats, boat ramps,

11   breakwaters, and other similar improvements—that are located on state-owned

12   submerged lands and provide access to adjacent Tongass National Forest sites and

13   infrastructure.  At statehood, when title to submerged lands passed to the State of

14
     Alaska, the facilities (referred to by the Parties as "marine access points") that were
15
     constructed and operated by the federal government no longer had title to the
16
     submerged land underlying each facility.
17

18       11.     As part of the reciprocal exchange of easements, the United States also

19   received easement rights at 126 locations for log transfer facilities to support silviculture

20   operations.  Approximately half of the log transfer facility easement locations had

21   existing facilities from past federal timber sales, and approximately half of the log

22   transfer facility easement locations were chosen by the Forest Service as suitable areas

23
     for infrastructure to support future silviculture operations.
24

25

26

*SOA v. USFS and Beth Pendleton*                           1:16-cv-00018-SLG
COMPLAINT                                                    Page 4 of 36
Case 1:16-cv-00018-RRB   Document 1   Filed 12/13/16   Page 4 of 36

ATTORNEY GENERAL, STATE OF ALASKA
Dimond Courthouse
PO Box 110300, JUNEAU, ALASKA 99811
PHONE (907) 465-3600

12.     As part of the reciprocal exchange of easements, the State received easement rights to 19 transportation and utility corridors connecting the communities of Southeast Alaska to each other and to the North American road system.  At the time of the exchange, the State was concerned that the Forest Service's 2001 Roadless Area Conservation Rule ("Roadless Rule") may become applicable in the Tongass National Forest and may limit the development of infrastructure in Southeast Alaska.

13.     In October 2003, the Deputy Commissioner of AKDOT initiated discussions with the Deputy Regional Forester for the Forest Service's Alaska Region, regarding the State's need for a transportation and utility corridor connecting Ketchikan to the North American highway system and electric utility grid by way of the Bradfield Canal (then referred to as the "Bradfield Corridor").  Those discussions lead to an idea for a congressionally approved equal value exchange of easements, where the Forest Service would receive easements for its infrastructure located on state-owned submerged lands in exchange for the transportation and utility easement needed by the State.

14.     The corridor linking the Ketchikan road system to Shelter Cove is the southernmost portion of the Bradfield Corridor that links Ketchikan to the North American highway system and electric utility grid.

15.     During the fall and early winter of 2003, the discussions between the Forest Service and the State expanded to include locations throughout Southeast Alaska where easements were necessary to accommodate existing infrastructure and access requirements across the intermingled state and federal lands.  The Forest Service's

*SOA v. USFS and Beth Pendleton*                                    1:16-cv-00018-SLG
COMPLAINT                                                                        Page 5 of 36
Case 1:16-cv-00018-RRB   Document 1   Filed 12/13/16   Page 5 of 36

other waterways where the Forest Service required permanent access rights, and

collected information regarding the transportation and utility corridors required by the

State.  The Geometronics Group drew the approximate locations of the easements

intended for exchange onto the Forest Service's base map for the Tongass National

Forest.

16.     On January 22, 2004 the Parties finalized the map of approximate

locations of existing and proposed facilities for a reciprocal easement exchange.  The

Parties never intended that the map would be used to depict actual locations of any

particular facility, nor did the Parties intend that the map would be used to demarcate

easement boundaries.  The January 22, 2004 map includes a disclaimer evidencing the

Parties' common understanding of the depicted locations of the easements intended for

reciprocal exchange: "Boundaries and locations are approximate. This map should not

be used or interpreted for legal or administrative actions."

17.     The Forest Service Alaska Region's Director of Engineering prepared the

first draft of the proposed legislation to exchange easements, dated January 15, 2004,

and presented the proposed legislation and the January 22, 2004 map to each member of

the Alaska congressional delegation on March 16, 2005.  That draft of the legislation

described the process for determining the location of highway infrastructure as:

a)      The Forest Service would issue a right of entry permit over

National Forest System lands for the State of Alaska to determine a suitable and

constructible location for the facility; and

**ATTORNEY GENERAL, STATE OF ALASKA**
Dimond Courthouse
PO Box 110300, JUNEAU, ALASKA 99811
PHONE (907) 465-3600

*SOA v. USFS and Beth Pendleton*                           1:16-cv-00018-SLG
COMPLAINT                                                          Page 6 of 36
Case 1:16-cv-00018-RRB   Document 1   Filed 12/13/16   Page 6 of 36

b)    The Forest Service would issue a perpetual easement for operation and maintenance of the infrastructure upon the State providing an as-built survey of the constructed facility.

18.    From March 2005 through June 2005, the Forest Service and the State of Alaska continued to revise the proposed legislation, with each draft getting progressively shorter.  The key provisions for locating transportation facilities and transferring highway easements remained consistent:

a)    The location of the highway facility would be jointly agreed upon by the Parties; and

b)    The provisions of the National Environmental Policy Act ("NEPA") and the Alaska National Interest Land Conservation Act would not apply to the Forest Service's transfer of the easements.

19.    On July 1, 2005, the Parties' further refined proposed legislation was forwarded by AKDOT's Commissioner to the Alaska congressional delegation for incorporation into the pending highway funding bill.  The proposed legislation referenced and included the agreed upon map of the log transfer facilities, marine access points, and transportation and utility corridors that required a reciprocal exchange of easements.  The map delivered to the Alaska delegation on July 1, 2005 was dated June 15, 2005.

20.    On July 14, 2005, the Parties were notified by the chief of staff for the U.S. House Committee on Transportation and Infrastructure that the legislation for the intended exchange of easements was being modified by the congressional committee to

*SOA v. USFS and Beth Pendleton*                                    1:16-cv-00018-SLG
COMPLAINT                                                                   Page 7 of 36
Case 1:16-cv-00018-RRB   Document 1   Filed 12/13/16   Page 7 of 36

ATTORNEY GENERAL, STATE OF ALASKA
Dimond Courthouse
PO Box 110300, JUNEAU, ALASKA 99811
PHONE (907) 465-3600

reflect the immediate exchange of easements effective upon enactment by Congress. Shortly thereafter the Parties were similarly notified that the legislation would only reference the land exchange map, which would be labeled Map Number 92337. Those congressional modifications became the final language of SAFETEA-LU § 4407: "Notwithstanding any other provision of law, the reciprocal rights-of-way and easements identified on map numbered 92337 and dated June 15, 2005, are hereby enacted into law."

21.     On August 10, 2005, with the enactment of SAFETEA-LU § 4407, Congress redrew the map of the Tongass National Forest to incorporate transportation and utility easements connecting the communities of Southeast Alaska and to expand the perimeter of the National Forest by incorporating the reciprocally exchanged easements for federal-owned and operated log transfer facilities and marine access points.

22.     Because the transportation and utility rights-of-way and easements were established by Congress, the Forest Service does not have discretion to deny the issuance of recordable documentation of an easement connecting the communities through the transportation or utility corridors identified in Map 92337. As the subservient estate holder, however, the Forest Service would be expected to participate in the environmental and engineering analyses to properly locate and permit transportation and utility facilities to connect the communities of Southeast Alaska.

ATTORNEY GENERAL, STATE OF ALASKA
Dimond Courthouse
PO Box 110300, JUNEAU, ALASKA 99811
PHONE (907) 465-3600

*SOA v. USFS and Beth Pendleton*                    1:16-cv-00018-SLG
COMPLAINT                                                           Page 8 of 36

ATTORNEY GENERAL, STATE OF ALASKA
Dimond Courthouse
PO Box 110300, JUNEAU, ALASKA 99811
PHONE (907) 465-3600

## SECTION 4407 MOU TO EFFECTUATE
## THE EASEMENT EXCHANGE

23.    In 2006, the Parties developed a memorandum of understanding ("the

Section 4407 MOU") to create a framework and process for transferring the easements

established in SAFETEA-LU § 4407.  The State of Alaska Department of Natural

Resource ("AKDNR"), as the manager of the state-owned submerged lands, also

participated in the development of and is a signatory to the Section 4407 MOU.

**I.      Marine access points.**

24.    The Section 4407 MOU provided a blanket authorization allowing the

Forest Service to construct, operate and maintain each of the 231 marine access points

listed on Map 92337.  With the exception of limited commercial activities that would

still require individual AKDNR authorizations, the Section 4407 MOU also authorized

perpetual public use of and access over the state-owned tidelands at each of the marine

access points.  Thus, upon the signing of the Section 4407 MOU, the Forest Service was

provided perpetual use and easement rights at the 231 listed locations.

**II.     Log transfer facilities.**

25.    The Section 4407 MOU established a process for AKDNR to review

Forest Service easement applications for individual log transfer facilities.  The Section

4407 MOU also included a template easement for log transfer facilities that details the

agreed upon terms and conditions for use of the state-owned lands as well as requiring

surveyed diagrams of the constructed improvements for AKDNR's issuance of

recordable documentation.  The Forest Service requested and received easement

*SOA v. USFS and Beth Pendleton*                    1:16-cv-00018-SLG
COMPLAINT                                            Page 9 of 36

ATTORNEY GENERAL, STATE OF ALASKA
Dimond Courthouse
PO Box 110300, JUNEAU, ALASKA 99811
PHONE (907) 465-3600

documentation for its 66 existing log transfer facilities listed on Map 92337, and may still request documentation of its easements for the 60 listed log transfer facilities intended for development and use in future silviculture activities.

26. The Forest Service received the benefit of the State's timely authorizations for the Forest Service's perpetual use of state-owned lands at all requested marine access points (231 sites) and at all log transfer facilities requested by the Forest Service (66 sites).

27. The State of Alaska did not condition the issuance of easements over the submerged lands underlying the Forest Service's log transfer facilities and marine access points on proof that each facility's location was accurately depicted on Map 92337.

28. The Forest Service took full advantage of Section 4407's "notwithstanding" provision and accepted the hundreds of easements across state-owned land—expanding the perimeter of the Tongass National Forest and vastly increasing the number of places where the public could lawfully access federal lands in perpetuity—without the Forest Service performing individual or programmatic NEPA reviews or issuing NEPA decisions on the potential effects of incorporating the transferred property rights.

## III. Transportation and utility corridors

29. The Section 4407 MOU established a two-stage process for transferring easements for transportation and utility infrastructure to connect the communities of Southeast Alaska. In the first stage, environmental studies and design work are

performed under an easement authorizing AKDOT to conduct survey and engineering activities anywhere within a mile-wide corridor to determine a feasible location for the entire length of the facility. Once a feasible location for the transportation or utility facility is determined, based on environmental, geotechnical, fiscal, and constructability factors, the second stage of work is authorized under a separate easement that authorizes construction, operation and maintenance of the facility in a precisely defined and fixed highway right-of-way.

30.     This two-stage process is standard practice for developing transportation and utility infrastructure through areas without roads. This two-stage process is also recognized in the Forest Service Handbook (FSH 7709.56, Section 20) as the method to locate roads on National Forest System lands. When no specific information such as detailed topographic, geotechnical or environmental data is available at the time of the establishment of a transportation or utility corridor, the two-stage process is the only rational method to convey sufficient property rights to determine an acceptable location and then to construct and operate the new facility.

31.     The Section 4407 MOU's paragraph D(1) directs the Forest Service to issue easements authorizing AKDOT "to conduct engineering and all other activities necessary or incident to highway and utility planning, design and environmental review processes." The recordable easement documentation that authorizes planning activities (commonly referred to as the D-1 easement) was pre-negotiated and was included as an attachment to the Section 4407 MOU. The location of the corridors described in each D-1 easement roughly coincide with the corridors connecting the communities of

*SOA v. USFS and Beth Pendleton*                    1:16-cv-00018-SLG
COMPLAINT                                                        Page 11 of 36
Case 1:16-cv-00018-RRB   Document 1   Filed 12/13/16   Page 11 of 36

ATTORNEY GENERAL, STATE OF ALASKA
Dimond Courthouse
PO Box 110300, JUNEAU, ALASKA 99811
PHONE (907) 465-3600

ATTORNEY GENERAL, STATE OF ALASKA
Dimond Courthouse
PO Box 110300, JUNEAU, ALASKA 99811
PHONE (907) 465-3600

Southeast Alaska as depicted on Map 92337, though paragraph D(1) makes clear that Map 92337 "is intended, in part, to identify the servient estate" and not the location of any future facility. Paragraph D(1) further directs that each D-1 easement identify the square-mile quadrangle sections for the servient estate where planning activities may occur, and recognizes that the location of the easement will be further refined and detailed by the Parties during the course of the authorized highway and utility planning, design, and environmental review processes.

32.     The Section 4407 MOU's template D-1 easement provides a space for the narrative description of the specific square-mile sections from the United State Geological Survey quadrangle maps where planning work is authorized. The template D-1 easement restricts planning activities to an approximate 300-foot width within the identified square-mile sections, which is intended to minimize effects to the National Forest by limiting clearing for sight line surveys, geotechnical investigations, and other engineering or environmental activities to the approximate width of the final easement for construction.

33.     The D-1 easements were intended to replace Forest Service right of entry permits and special use permits that would be necessary for these same environmental and engineering investigations. Under the authority of a D-1 easement, AKDOT could clear brush for surveys and geotechnical investigations within 150 feet of either side of a proposed highway centerline located anywhere within the one-mile sections identified in the D-1 easement. The Parties' communications refer to this concept as a "floating easement."

*SOA v. USFS and Beth Pendleton*                          1:16-cv-00018-SLG
COMPLAINT                                                      Page 12 of 36

34.     In 2009 and 2010 the Forest Service issued D-1 easements for all of the transportation and utility corridors identified on Map 92337, with the exception of the East Lynn Canal corridor.  An easement was issued for an East Lynn Canal facility under authority of 23 U.S.C. § 317 while the Section 4407 MOU was being negotiated. Since the Section 4407 corridors were established by Congress, there was no Forest Service discretionary decision and no Forest Service NEPA obligations for the Forest Service's issuance of the D-1 easements.

35.     The second stage of the Section 4407 MOU process for issuing documentation of the transportation and utility easements is described in the Section 4407 MOU's paragraph D(2).  That paragraph directs the Forest Service to issue an easement (commonly referred to as the D-2 easement) authorizing AKDOT's construction, reconstruction, operation and maintenance of a road or utility where the location of the road or utility is agreed to by the Parties in the course of the planning process conducted under the D-1 easement.  The pre-negotiated template D-2 easement, which is an attachment to the Section 4407 MOU, details the state and federal environmental permits and approvals that must be obtained prior to the State commencing construction under a D-2 easement for any particular facility.

36.     Paragraph 9 of the D-2 easement embodies the Parties' intent that the Forest Service, as the federal land manager and servient estate holder, be given the opportunity to directly participate in the location of any facility by reviewing the construction plans for the proposed highway or utility to assess potential effects upon National Forest System lands and resources.  Paragraph 9 requires that the Parties

ATTORNEY GENERAL, STATE OF ALASKA
Dimond Courthouse
PO Box 110300, JUNEAU, ALASKA 99811
PHONE (907) 465-3600

1     mutually agree upon the design features of the facility during the preparation of plans

2     and specifications for each project, and includes the requirement that "the plans shall be

3     revised, modified, or supplemented to meet the approval of the Regional Forester." In

4     2014, the Forest Service reinterpreted that phrase to disregard SAFETEA-LU § 4407's

5     establishment of the easements "notwithstanding any other provision of law" and

6     unilaterally imposed a condition that D-2 easements would not be issued without a

7     Forest Service NEPA decision showing full compliance with all Forest Service road

8     construction limitations and prohibitions.

9

10         37.     In the context of the State's repeated requests that the Forest Service

11     deliver the D-2 easement for Shelter Cove Road project, and in the context of

12     congressional inquiries regarding the Forest Service's delays in issuing that easement,

13     the Forest Service's Regional Forester explained that the review of the State's

14     development plans under the paragraph 9 of the D-2 easement would require a

15     discretionary decision from the Forest Service and that discretionary decision would

16     require the Forest Service to demonstrate full compliance with NEPA.

17

18         38.     The terms and conditions of the Section 4407 MOU's template D-2

19     easement were drafted by the Parties between mid-June and September 2006, and the

20     Parties' common understanding of the effect of any Forest Service review and approval

21     of a project's plans and specifications under the D-2 easement's paragraph 9 was

22     solidified on August 3, 2006.

23

24         39.     On July 3, 2006, the State's Assistant Attorney General (AAG)

25     recommended revisions to paragraph 9 that would replace all references to a Forest

26

*SOA v. USFS and Beth Pendleton*        1:16-cv-00018-SLG
COMPLAINT        Page 14 of 36
Case 1:16-cv-00018-RRB    Document 1    Filed 12/13/16    Page 14 of 36

ATTORNEY GENERAL, STATE OF ALASKA
Dimond Courthouse
PO Box 110300, JUNEAU, ALASKA 99811
PHONE (907) 465-3600

Service opportunity to "approve" plans and specifications with references to the Forest

Service's opportunity to "review" plans and specifications. In furtherance of the goal to

clarify that the issuance of a D-2 easement was a non-discretionary act by the Forest

Service, on July 3, 2006 the State's AAG proposed additional language for the draft

Section 4407 MOU's paragraph D(3) that read:

> Granting of the D-2 easement is primarily in the nature of a
> ministerial task, and every presumption shall be made in favor of
> granting the D-2 easement consistent with the spirit and intent of
> Section 4407 of Public Law 109-59 which established a right-of-
> way corridor subject to no conditions and 'notwithstanding any
> other provision of law.'

40. On August 3, 2006 the Forest Service delivered a revised draft template

D-2 easement that rejected the State's proposed revision to paragraph 9, with an

explanatory statement from the Office of General Counsel (OGC) attorney:

> In ¶ 9, we had been tweaking the language quite a bit because of
> the State's concerns about FS discretion. However, it occurred to
> me that the original language [the language of the final paragraph
> 9] is appropriate, as it is the language in the standard USDOT
> easement [an easement issued under 23 U.S.C. 317] that the State
> normally receives.

41. At that time, the Parties recently completed the preparation and issuance

of an easement, pursuant to the requirements of 23 U.S.C. 317, for the State's project

located in the Section 4407 transportation and utility corridor along East Lynn Canal.

The Forest Service participated in the environmental review and final location of the

highway project located in East Lynn Canal corridor, and issued an easement for the

project under 23 U.S.C. 317, without preparing a NEPA analysis or decision.

*SOA v. USFS and Beth Pendleton*                                  1:16-cv-00018-SLG
COMPLAINT                                                          Page 15 of 36

ATTORNEY GENERAL, STATE OF ALASKA
Dimond Courthouse
PO Box 110300, JUNEAU, ALASKA 99811
PHONE (907) 465-3600

42.     In reliance upon the August 3, 2006 statement by the Forest Service's OGC attorney, the State did not insist upon additional clarifications in paragraph 9 of the template D-2 easement, and in paragraph D(3) of the draft Section 4407 MOU, to formalize the Parties' common understanding that the Forest Service's review and approval of a project's plans and specifications was not a discretionary decision and would not trigger the need for a NEPA review and decision by the Forest Service.

43.     The Section 4407 MOU was finalized and signed by the Parties in September 2006 without any modification to the template D-2 easement's paragraph 9. Thus, the Parties rejected the proposed introduction of a discretionary Forest Service decision into the Section 4407 MOU.

44.     The Section 4407 MOU and its template D-2 easement makes no mention of NEPA, though the template D-2 requires a proposed project to be in compliance with nine specifically identified federal laws.

45.     The Forest Service never requested, and the State never agreed to, a waiver from SAFETEA-LU § 4407's "notwithstanding any other provision of law" clause that exempted the Forest Service's review and approval of the location of a proposed transportation or utility facility from any NEPA review or decision.

### THE PARTIES' PLANNING ACTIVITIES
### FOR SHELTER COVE ROAD

46.     As far back as 1997, the Forest Service's Tongass National Forest Land and Resource Management Plan ("Forest Plan") set management goals and guidelines for a future public transportation and utility system connecting Ketchikan to Shelter

*SOA v. USFS and Beth Pendleton*                                   1:16-cv-00018-SLG
COMPLAINT                                                          Page 16 of 36

ATTORNEY GENERAL, STATE OF ALASKA
Dimond Courthouse
PO Box 110300, JUNEAU, ALASKA 99811
PHONE (907) 465-3600

Cove and beyond. The 1997 Forest Plan's maps depict the transportation corridor linking Ketchikan to Shelter Cove in the same location as the corridor depicted in Map 92337, though there was no field work done to locate a road or utility in that corridor prior to the production of the 1997 maps.

47. In early 2004, the State of Alaska and the Forest Service specifically discussed the development of a road (then called the Revilla Road) connecting the Ketchikan road system to the Forest Service road system at Shelter Cove. By that time, wetland mapping and preliminary geotechnical work were performed to more precisely locate a potential transportation and utility alignment.

48. In parallel with the Parties' development of the map of proposed easements to be exchanged in and around the Tongass National Forest, in August 2004 the State completed its Southeast Alaska Transportation Plan ("SATP") detailing the State's plan to connect the communities of Southeast Alaska to each other and to the North American highway system. The SATP corridors and the SAFETEA-LU § 4407 corridors are virtually identical. The transportation and utility corridor connecting Ketchikan to Canada is identified as the Revillagigedo Highway in the SATP and follows the same route as the Bradfield Corridor earlier identified by the Parties in the easement exchange discussions.

49. In 2008, after the passage of SAFETEA-LU § 4407, the Forest Service issued an entirely new Forest Plan that incorporated the SATP and the SAFETEA-LU § 4407 corridors into the Forest Service management plan as a Transportation and Utility Systems (TUS) Land Use Designation (LUD). Under the guidelines of the

*SOA v. USFS and Beth Pendleton*                           1:16-cv-00018-SLG
COMPLAINT                                                   Page 17 of 36

ATTORNEY GENERAL, STATE OF ALASKA
Dimond Courthouse
PO Box 110300, JUNEAU, ALASKA 99811
PHONE (907) 465-3600

2008 Forest Plan, the TUS LUD remains a dormant land use prescription until a transportation or utility project is permitted and ready for construction, at which time the TUS LUD springs into existence and supersedes the underlying land management prescriptions within the narrow boundary of the transportation or utility easement issued for the project.

50.     In the 2008 Forest Plan map, the TUS LUD connecting Ketchikan to Shelter Cove depicts two possible transportation routes to connect the Ketchikan road system to the existing Shelter Cove Road; a potential electrical transmission line route is also depicted as running in the same general direction but to the north of both potential transportation routes.  The northerly of the two transportation routes ("the high route") passes through the congressionally designated wilderness area encompassing the Naha River drainage ("the Naha LUD II"), and the southerly route ("the low route") parallels George Inlet and connects to the existing Shelter Cove Road north of the Salt Lagoon. The two transportation routes from the 2008 Forest Plan were the two principle routes considered in the development of the State's Shelter Cove Road project (See Exhibit 1 for locations of high and low routes).

51.     The 2008 Forest Plan includes an errata for its maps that states in part:

> The Tongass Forest Plan LUDs were developed using small-scale
> Tongass-wide Forest maps … The level of accuracy of a map at
> such at such a scale is approximately ± 500 feet … It is the role of
> the subsequent project planning to resolve, within the overall intent
> of the Forest Plan mapped LUDs, the actual location of activities
> on the ground.

*SOA v. USFS and Beth Pendleton*                    1:16-cv-00018-SLG
COMPLAINT                                                      Page 18 of 36
Case 1:16-cv-00018-RRB    Document 1    Filed 12/13/16    Page 18 of 36

ATTORNEY GENERAL, STATE OF ALASKA
Dimond Courthouse
PO Box 110300, JUNEAU, ALASKA 99811
PHONE (907) 465-3600

52.     SAFETEA-LU § 4407's Map 92337 also was created by using the Tongass-wide Forest map as a base, and therefore has the same scale as the 2008 Forest Plan map.

53.     In January of 2009, when choosing a route for the Shelter Cove Road D-1 easement, the State and the Forest Service considered the high route and the low route. The Parties also considered the potential development of a two-mile logging road on Alaska Mental Health Trust property that would connect the high route to the low route at the approximate mid-point of both routes; using the two-mile connector road, road planners had two additional corridor options by transferring the road to the alternate alignment at the midway point—the high-low route and the low-high route (See Exhibit 1 for the location of the connecting logging road).

54.     The Parties agreed upon a D-1 easement to further study and attempt to locate a road on a variant of the high route, as a segment of the road corridor followed a length of the power transmission corridor depicted in the 2008 Forest Plan.  The route depicted on the D-1 easement became commonly referred to as the high-high route since it did not change course at the midpoint logging road.

55.     The D-1 easement for the Shelter Cove Road was recorded on February 26, 2009 and contains a narrative description of the contiguous square-mile quadrangle sections where planners believed they could locate a road on the high-high route.  The D-1 easement effectuates the concept of the floating easement by limiting engineering and other activities to an approximate 300-foot-wide right-of-way, but not

*SOA v. USFS and Beth Pendleton*                              1:16-cv-00018-SLG
COMPLAINT                                                          Page 19 of 36
Case 1:16-cv-00018-RRB    Document 1    Filed 12/13/16    Page 19 of 36

ATTORNEY GENERAL, STATE OF ALASKA
Dimond Courthouse
PO Box 110300, JUNEAU, ALASKA 99811
PHONE (907) 465-3600

fixing the location of that 300-foot-wide right-of-way anywhere within the narrative description of the square-mile sections where the planning work is authorized.

56.     The final alignment for the State's Shelter Cove Road project traverses over a single mile stretch of National Forest System lands, which is located within two of the square-mile sections listed in the narrative description of the 2009 D-1 easement. The two sections, which are commonly referred to by the Parties as Section 8 and Section 17, are fully described in the D-1 easement's narrative description as Sections 8 and 17, Township 73, and Range 92, located South and East of the Cooper River Meridian (See Exhibit 1 for the location of Sections 8 and 17).

57.     In the years from 2010 through 2013, the State compared and evaluated potential impacts to the Tongass National Forest and to cultural, archeological, environmental and other sensitive resources from the four potential alternative alignments.  As early as 2011 it was becoming increasingly obvious that the development of the low-low route along George Inlet would result in the least environmental impact among the four alternative routes.  However, development of the low-low route would require the purchase of private roads and rights-of-way from the Cape Fox Corporation and the Alaska Mental Health Trust (See Exhibit 1 for locations of privately held properties).

58.     In early 2012 the Parties began earnest discussions about shifting the Shelter Cove Road alignment from the high-high route identified in the 2009 D-1 easement to the low-low route along George Inlet.  Since the newly proposed alignment

*SOA v. USFS and Beth Pendleton*                                    1:16-cv-00018-SLG
COMPLAINT                                                              Page 20 of 36
Case 1:16-cv-00018-RRB    Document 1    Filed 12/13/16    Page 20 of 36

ATTORNEY GENERAL, STATE OF ALASKA
Dimond Courthouse
PO Box 110300, JUNEAU, ALASKA 99811
PHONE (907) 465-3600

1  would be located mostly on private land, the shifting of the alignment on National

2  Forest System land would only occur in Sections 8 and 17.

3      59.    In May of 2012, the Parties met to confirm their understandings of

4  whether the proposed realignment in Sections 8 and 17 was an authorized action under

5  the Section 4407 MOU.  This was, after all, the first transportation project developed

6  under the requirements of the Section 4407 MOU and under the authority of a D-1

7  easement.  Those discussions culminated in a letter dated May 11, 2012 from AKDOT's

8  Regional Director to the Forest Service's Tongass Forest Supervisor confirming the

9  Parties' common understanding that the Section 4407 MOU authorizes the transfer of a

10  300-foot-wide D-2 easement for the construction and operation of the Shelter Cove

11  Road located anywhere within the square mile sections identified in the project's D-1

12  easement.

13      60.    Upon the confirmation of the Parties' mutual understanding, the State

14  moved to complete the Reconnaissance Report for the Shelter Cove Road project.  The

15  August 2012 Reconnaissance Report explained and recommended the development of

16  Alternative II—the low-low route—because construction on that route would result in

17  the least environmental impact.  The Reconnaissance Report also acknowledged that the

18  federal environmental review for the project would be conducted by the United States

19  Army Corps of Engineers in the context of the Clean Water Act permitting process, as

20  the required easement over National Forest System lands would be issued under the

21  authority of SAFETEA-LU § 4407.

22

23

24

25

26

*SOA v. USFS and Beth Pendleton*                              1:16-cv-00018-SLG
COMPLAINT                                                     Page 21 of 36
Case 1:16-cv-00018-RRB   Document 1   Filed 12/13/16   Page 21 of 36

61.     Upon the confirmation of the Parties' mutual understanding that a road could be located within Sections 8 and 17 under the authority of SAFETEA-LU § 4407, the State also commenced negotiations for the purchase of the private roads and rights-of-way from Cape Fox Corporation and the Alaska Mental Health Trust.  Purchase agreements for those properties were executed on January 7, 2013 ($2,500,000) and May 28, 2013 ($127,280), respectively, and committed the State to permitting and constructing the road on the low-low route.

62.     Throughout 2013 the State worked with state and federal permitting agencies to fine tune the low-low route alignment in order to avoid or minimize possible environmental effects.  The fine tuning of the alignment included shifting the proposed road centerline 1000 feet, at the Forest Service's request, to avoid impacts to a stream on National Forest System lands.  By the end of 2013, the State settled upon a road alignment that would receive approvals from all state and federal permitting agencies.

63.     On December 23, 2013, the State sent to the Forest Service the plans, drawings and specifications for the proposed Shelter Cove Road for the Forest Service's review and processing of the D-2 easement in accordance with the terms of the Section 4407 MOU.  Little did the State know that within three months the Forest Service would take a diametrically opposed position regarding the Parties' mutual development and understandings of the project up to that point.

ATTORNEY GENERAL, STATE OF ALASKA
Dimond Courthouse
PO Box 110300, JUNEAU, ALASKA 99811
PHONE (907) 465-3600

64.    On February 11, 2014, the Forest Service recorded a corrected D-1 easement for planning activities in the Shelter Cove Road corridor.  The original D-1 easement authorized activities along a small segment of the proposed utility alignment identified in the 2008 TUS LUD, which in 2009 appeared to be the most feasible road alignment; the corrected D-1 easement adjusted the planning corridor to better reflect the Shelter Cove Road corridor as shown in the 1997 Tongass Plan and as depicted in Map 92337.  The narrative description of the easement corridor in the 2014 corrected D-1 easement still included Sections 8 and 17 which, as previously agreed to by the Parties, would allow the transfer of a D-2 easement to complete the State's realignment onto non-federal lands for the low-low alternative route.  Unbeknownst to the State at that time, the graphic depiction attached to the corrected D-1 easement also included a notation in the map's legend that reads: "300 Feet Easement Buffer".  On the map, the newly depicted 'easement buffer' straddles the line intended to show the general location and direction of the transportation and utility corridor.

65.    Shortly thereafter, on March 21, 2014, the Forest Service's Regional Forester sent a letter to the State's commissioners for AKDOT and AKDNR stating that "there may be differing assumptions and interpretations of the [Section 4407] MOU language."  The letter explained the Forest Service's assumption and interpretation that "where National Forest System lands outside of the 300 feet provided in the D-1

*SOA v. USFS and Beth Pendleton*                                    1:16-cv-00018-SLG
COMPLAINT                                                           Page 23 of 36
Case 1:16-cv-00018-RRB   Document 1   Filed 12/13/16   Page 23 of 36

ATTORNEY GENERAL, STATE OF ALASKA
Dimond Courthouse
PO Box 110300, JUNEAU, ALASKA 99811
PHONE (907) 465-3600

ATTORNEY GENERAL, STATE OF ALASKA
Dimond Courthouse
PO Box 110300, JUNEAU, ALASKA 99811
PHONE (907) 465-3600

easement are needed for planning purposes, that need may be accommodated through issuance of a special use permit."

66.     The Forest Service's March 21, 2014 correspondence functioned as a declaration that the State's D-1 planning easements would no longer float within the identified square-mile sections to allow for engineering and environmental investigations but, rather, would be fixed to within 150 feet of either side of the line drawn on each D-1 easement attachment.  The purpose of the line drawn on the map attached to each D-1 easement was to show the approximate route of a future transportation or utility system, within the square-mile sections listed in each D-1 easement, to inform readers that may be unable to read or understand the narrative legal description of the planning corridor.

67.     The Parties are fully aware that the Forest Service's new assumptions and interpretations of the D-1 easement, which would only authorize planning activities in a fixed and tightly constrained corridor, would prohibit the development of transportation and utility infrastructure along the congressionally established corridors.  The route lines drawn on the D-1 easement maps cross lakes, pass over cliffs and other steep topography, and may unnecessarily impact cultural, archeological, environmental, wildlife or other sensitive resources since flexibility to adjust the alignment would be limited to 150 feet in either direction of a centerline drawn without surveys, studies or engineering.

*SOA v. USFS and Beth Pendleton*                    1:16-cv-00018-SLG
COMPLAINT                                            Page 24 of 36
Case 1:16-cv-00018-RRB   Document 1   Filed 12/13/16   Page 24 of 36

68.     On April 16, 2014, the State's program managers in AKDOT and AKDNR met with the Forest Service, as the Forest Service's new assumptions and interpretations had the potential for disrupting a number of infrastructure development projects that were well underway.  At that meeting, the Forest Service's Director of Ecosystem Planning and Budget ("EPB") explained that SAFETEA-LU § 4407 was ambiguous as Congress used the verb "enacted" to consummate the reciprocal easement exchange rather than using the verb "granted."  Thus, as the Forest Service's rationale was explained, no property interests were conveyed to the State pursuant to SAFETEA-LU § 4407.  As explained by the Director of EPB, any use of National Forest System land outside the 300-foot-wide planning corridor would require a Forest Service NEPA analysis and decision and a showing of full compliance with all federal laws and regulations administered by the Forest Service.

69.     The Parties continued to meet through the spring and summer of 2014, with the State providing written analyses and documents from the Parties' development of the easement exchange legislation and the Section 4407 MOU to show that the Forest Service's new assumptions and interpretations were contrary to the Parties' agreements. The only significant development coming from those meetings was a July 14, 2014 announcement from the Forest Service's Director of EPB that the Forest Service also intended to require a NEPA analysis and decision prior to the State conducting any

*SOA v. USFS and Beth Pendleton*                           1:16-cv-00018-SLG
COMPLAINT                                                              Page 25 of 36
Case 1:16-cv-00018-RRB    Document 1    Filed 12/13/16    Page 25 of 36

ATTORNEY GENERAL, STATE OF ALASKA
Dimond Courthouse
PO Box 110300, JUNEAU, ALASKA 99811
PHONE (907) 465-3600

further engineering or environmental planning activities within the boundaries of the

D-1 easements.

70.     During the 2014 construction season, the Federal Highway Administration

completed major improvements to two federally owned and operated forest highways

(Kake to Seal Point Road and the North Prince of Wales Highway), which the State

committed to accept upon completion of construction through D-2 easements

transferring ownership and maintenance responsibilities of the facilities.  The

Forest Service conditioned the transfer of the D-2 easements for the projects upon the

State's concurrence with the Forest Service's new assumptions and interpretations.  The

State refused the additional condition and the Forest Service did not issue the easements

for the newly improved federal highways, leaving the newly improved federal highways

without snow removal and other maintenance during the following winter.

71.     On June 12, 2015, following many written requests from the State and

inquiries by Congress, the Forest Service issued three D-2 easements.  Two of the D-2

easements transferred responsibilities for the forest highways improved by the

Federal Highway Administration, and the third D-2 easement transferred responsibilities

for the easternmost eight-mile section of the existing Shelter Cove Road.

72.     The Forest Service unilaterally modified all three D-2 easements to

include an additional sentence not found in the Section 4407 MOU pre-negotiated

template D-2 easement's Paragraph 9: "Review of any plans for new, additional, or

further earth disturbing activities for highway and utility projects within the easement

ATTORNEY GENERAL, STATE OF ALASKA
Dimond Courthouse
PO Box 110300, JUNEAU, ALASKA 99811
PHONE (907) 465-3600

area will be subject to appropriate compliance with the National Environmental Policy

Act."

73.     The Forest Service's unilateral modification of the D-2 easement was

contrary to the congressional grant in SAFETEA-LU § 4407.  Since the Section 4407

corridors were established by Congress "notwithstanding any other provision of law,"

there is no Forest Service discretionary decision and no Forest Service NEPA obligation

associated with the State's use of the congressionally established transportation and

utility easement.

**CONGRESS'S CONSIDERATION OF THE FOREST SERVICE
ASSUMPTIONS AND INTERPRETATIONS**

74.     On June 12, 2015, the Senate Environment and Public Works committee

began consideration of a proposed amendment to Senate Bill 1647, the pending federal

highway funding bill, which would amend SAFETEA-LU § 4407 to cure any Forest

Service perceived defect by striking the verb phrase "hereby enacted into law" and

inserting the verb "granted".  The committee considered input from the Forest Service,

the Federal Highway Administration, and the State over the course of the following

eight days.

75.     On June 17, 2015, the Forest Service proposed a revision that would add a

qualifying phrase to the proposed amendment: "consistent with the Memorandum of

Understanding between the United States and the State of Alaska, Forest Service

Agreement No. 06MU-11100100-151".  The Senate Committee on the Environment and

Public Works rejected the Forest Service's proposed revision on June 20, 2015, as the

*SOA v. USFS and Beth Pendleton*                                    1:16-cv-00018-SLG
COMPLAINT                                                            Page 27 of 36
Case 1:16-cv-00018-RRB   Document 1   Filed 12/13/16   Page 27 of 36

ATTORNEY GENERAL, STATE OF ALASKA
Dimond Courthouse
PO Box 110300, JUNEAU, ALASKA 99811
PHONE (907) 465-3600

Forest Service's proposal would introduce a condition to transfer (i.e., "consistent with

…") when the transfer of easement rights had already taken place upon the original

enactment of SAFETEA-LU § 4407.

76.     On June 23, 2015 Senate Bill 1647 was approved by the committee, with

the originally proposed amendment to Section 4407 to strike the verb phrase "hereby

enacted into law" and insert the verb "granted".

77.     On July 15, 2015 the Senate's Committee on the Environment and Public

Works published Report 114-80 that detailed the provisions of the highway bill.  On

page 23 of that report the committee describes the intended effect of the amendment to

SAFETEA-LU § 4407:

> SAFETEA–LU established reciprocal easements in section 4407
> between the United States Forest Service and the State of Alaska.
> The technical amendment to this section cures a perceived defect
> and now will allow the exchange of all remaining reciprocal
> easements to continue. As soon as possible, the Committee intends
> the Secretary of Agriculture (Secretary) to prepare and deliver to
> the State of Alaska an easement for the construction and operation
> of each highway located in a transportation and utility corridor
> identified on Map 92337 where the State of Alaska has already
> secured all necessary Federal and State permits for the construction
> of each highway facility. The Secretary of Agriculture is
> encouraged to participate as a cooperating agency in the
> environmental analysis and permitting of the remaining State
> highways to be located in Map 92337's transportation and utility
> corridors linking the communities of Southeast Alaska. The
> Committee intends that the Secretary of Agriculture will not
> withhold or deny the issuance of an easement for a proposed
> transportation or utility project that otherwise has all necessary
> construction permits and authorizations from other State and
> Federal agencies.

*SOA v. USFS and Beth Pendleton*                              1:16-cv-00018-SLG
COMPLAINT                                                        Page 28 of 36
Case 1:16-cv-00018-RRB   Document 1   Filed 12/13/16   Page 28 of 36

ATTORNEY GENERAL, STATE OF ALASKA
Dimond Courthouse
PO Box 110300, JUNEAU, ALASKA 99811
PHONE (907) 465-3600

78.     The 2015 federal highway funding bill passed Congress on

December 2, 2015 and was signed into law on December 4, 2015.  The Senate

Environment and Public Works committee's amendment to SAFETEA-LU remained

intact through the remainder of the legislative process and is now law.

**THE STATE'S FINAL REQUESTS FOR THE
SHELTER COVE ROAD D-2 EASEMENT**

79.     On June 25, 2015, the State renewed its request for the D-2 easement for

the mile-long road segment to connect the low-low construction alternative to the

existing Shelter Cove Road.  The State's renewed request occurred just days after the

Senate Committee on the Environment and Public Works rejected the Forest Service's

proposed revisions to SAFETEA-LU § 4407 and finalized the amendment that "cures a

perceived defect and now will allow the exchange of all remaining reciprocal easements

to continue."  The State's renewed request for the D-2 easement included

documentation of the federal and state permits necessary for construction, which

included the United States Army Corps of Engineers' environmental assessment and

decision in compliance with NEPA.

80.     On July 16, 2015, the Forest Service's Regional Forester responded to the

State's renewed request with the decision:

> [C]onsistent with my letter to Commissioners Joe Balash and
> Patrick Kemp, dated March 21, 2014, which addressed the Forest
> Service's authority to issue easements where the alignment of the
> State's Shelter Cove project does not coincide with the rights-of-
> way described in Section 4407 [assumed and interpreted as 300
> feet wide].  It remains the position of the United States that a D-2
> easement for the segment of road within Section 17 is not
> authorized under Section 4407.

*SOA v. USFS and Beth Pendleton*                                    1:16-cv-00018-SLG
COMPLAINT                                                                Page 29 of 36

ATTORNEY GENERAL, STATE OF ALASKA
Dimond Courthouse
PO Box 110300, JUNEAU, ALASKA 99811
PHONE (907) 465-3600

The Forest Service's continuation of this narrow interpretation of the congressionally granted easements came the day after the Senate issued its report on the amendment to Section 4407, which described the same easements very broadly as "Map 92337's transportation and utility corridors linking the communities of Southeast Alaska."

81.     The Forest Service continued to refuse all requests for the transfer of the D-2 easement documentation for the Shelter Cove Road project.  The State of Alaska met with the Forest Service through the fall and winter of 2015-2016 to discuss the Forest Service's new assumptions and interpretations of Section 4407, and the effect of Congress's clarifications upon those assumptions and interpretations.

82.     On March 21, 2016 the Forest Service authorized construction of the State's Shelter Cove Road project in Sections 8 and 17 pursuant to a special use permit. The permit notes that an easement authorizing operation and maintenance of the road will be issued under the National Forest Roads and Trails Act ("FRTA") upon presentation of as-built drawings of the completed facility.  The State never applied for a special use permit or for a FRTA easement for the one-mile road segment that traverses Sections 8 and 17.

83.     Easements under FRTA require a discretionary decision by the Forest Service approving a proposed project's compliance with all Forest Service requirements, including the road building prohibitions of the Roadless Rule, and require a NEPA decision document.

*SOA v. USFS and Beth Pendleton*                          1:16-cv-00018-SLG
COMPLAINT                                                Page 30 of 36
Case 1:16-cv-00018-RRB   Document 1   Filed 12/13/16   Page 30 of 36

ATTORNEY GENERAL, STATE OF ALASKA
Dimond Courthouse
PO Box 110300, JUNEAU, ALASKA 99811
PHONE (907) 465-3600

84.     The Forest Service Handbook (FSH 2709.12, Section 34) restricts the width of FRTA easements to the limits of the slopes created in the cut-and-fill construction of the public road, which is generally well under 100 feet wide.  The standard width for highway easements granted to a state from the federal government is 300 feet wide to ensure sufficient flexibility for the installation of utilities and to accommodate future expansion or safety improvements.

85.     Easements issued under FRTA do not allow the construction or operation of electrical transmission lines or other utilities.

86.     Easements issued under FRTA break the continuity of the congressionally granted easements connecting the communities of Southeast Alaska to each other and to the North American road and utility systems.

**FIRST CAUSE OF ACTION—DECLARATORY RELIEF**
**(Forest Service Interpretation of a Fixed 300-Foot-Wide Section 4407 Corridor)**

87.     The State incorporates by reference all preceding paragraphs.

88.     The Forest Service is incorrect in its assumption and interpretation that the SAFETEA-LU § 4407 transportation and utility corridors are a maximum width of 300 feet and fixed upon the unexamined and unsurveyed lines drawn by the Forest Service in 2004 when the Parties prepared their legislative proposal for a reciprocal exchange of easements.

89.     The Forest Service's denial of the State's request for a D-2 easement for the Shelter Cove Road project, based on the assumption and interpretation of a 300-foot-wide fixed transportation and utility corridor, was not in accordance with

*SOA v. USFS and Beth Pendleton*                                    1:16-cv-00018-SLG
COMPLAINT                                                                     Page 31 of 36
Case 1:16-cv-00018-RRB   Document 1   Filed 12/13/16   Page 31 of 36

SAFETEA-LU § 4407 and its establishment of complete and unbroken transportation and utility corridors linking the communities of Southeast Alaska.

90.     The Forest Service's denial of the State's request for a D-2 easement for the Shelter Cove Road project, based on the assumption and interpretation of a 300-foot-wide fixed transportation and utility corridor, was not in accordance with the Parties' Section 4407 MOU that is designed to allow planning activities in a floating easement in order to determine an acceptable location for a transportation or utility facility.

91.     The Forest Service's denial of the State's request for a D-2 easement for the Shelter Cove Road project, based on the assumption and interpretation of a 300-foot-wide fixed transportation and utility corridor, was not in accordance with Congress's explicit directive to the Forest Service to not delay or deny the issuance of the easement once the State received all necessary permits for construction.

92.     The Forest Service's denial of the State's request for a D-2 easement for the Shelter Cove Road project, based on the assumption and interpretation of a 300-foot-wide fixed transportation and utility corridor, was arbitrary and capricious, and an abuse of the Parties' agreed upon location and review process in the Section 4407 MOU.

## SECOND CAUSE OF ACTION—DECLARATORY RELIEF
### (Forest Service Interpretation of a Required Discretionary Decision)

93.     The State incorporates by reference all preceding paragraphs.

*SOA v. USFS and Beth Pendleton*                                    1:16-cv-00018-SLG
COMPLAINT                                                                    Page 32 of 36
Case 1:16-cv-00018-RRB    Document 1    Filed 12/13/16    Page 32 of 36

ATTORNEY GENERAL, STATE OF ALASKA
Dimond Courthouse
PO Box 110300, JUNEAU, ALASKA 99811
PHONE (907) 465-3600

94.     The Forest Service's review and approval of planning or construction activities proposed to be completed within the transportation and utility easements granted under SAFETEA-LU § 4407 do not constitute discretionary decisions that require individual NEPA reviews and decisions, and do not require compliance with all Forest Service road building limitations and prohibitions.

95.     The Forest Service's denial of the State's request for a D-2 easement for the Shelter Cove Road project, based on the assumption and interpretation that a NEPA review and decision is required, was not in accordance with SAFETEA-LU § 4407's plain language that the easements were granted "notwithstanding any other provision of law."

96.     The Forest Service's denial of the State's request for a D-2 easement for the Shelter Cove Road project, based on the assumption and interpretation that the proposed road must comply with all Forest Service road building limitations and prohibitions, was not in accordance with the Parties' Section 4407 MOU that specifically lists the nine federal laws with which a proposed project must show compliance and that specifically and intentionally excluded NEPA or any Forest Service administered laws from the list.

97.     The Forest Service's denial of the State's request for a D-2 easement for the Shelter Cove Road project, based on the assumption and interpretation that the proposed road must comply with all Forest Service road building limitations and prohibitions, was not in accordance with Congress's explicit directive to the Forest Service to "not withhold or deny the issuance of an easement for a proposed

*SOA v. USFS and Beth Pendleton*                    1:16-cv-00018-SLG
COMPLAINT                                            Page 33 of 36

transportation or utility project that otherwise has all necessary construction permits and authorizations from other State and Federal agencies."

98.     The Forest Service's denial of the State's request for a D-2 easement for the Shelter Cove Road project, based on the assumption and interpretation that a NEPA review and decision is required, was arbitrary and capricious, in excess of statutory authority, and otherwise contrary to law.

### THIRD CAUSE OF ACTION—DECLARATORY RELIEF
### (Forest Service Adding NEPA requirement to Eastern Segment D-2 Easement)

99.     The State incorporates by reference all preceding paragraphs.

100.     The Forest Service's unilateral modification of the D-2 easement for the eight-mile section of the existing Shelter Cove Road to include a NEPA requirement, based on the Forest Service's assumption and interpretation that it retained discretionary authority to withhold approval of a project in a Section 4407 transportation and utility corridor, was arbitrary and capricious, and an abuse of the project location and review process the Parties agreed upon in the Section 4407 MOU.

### FOURTH CAUSE OF ACTION—INJUNCTIVE RELIEF
### (Forest Service's Refusal to Issue the D-2 Easement)

101.     The State incorporates by reference all preceding paragraphs.

102.     The Regional Forester Beth Pendleton's July 16, 2015 decision to deny the State's renewed request for the D-2 easement was contrary to SAFETEA-LU § 4407 and Congress's directive.

103.     The State sited the Shelter Cove Road in the least environmentally damaging location and in accordance with the terms of the Section 4407 MOU.  The

*SOA v. USFS and Beth Pendleton*          1:16-cv-00018-SLG
COMPLAINT          Page 34 of 36
Case 1:16-cv-00018-RRB   Document 1   Filed 12/13/16   Page 34 of 36

ATTORNEY GENERAL, STATE OF ALASKA
Dimond Courthouse
PO Box 110300, JUNEAU, ALASKA 99811
PHONE (907) 465-3600

1   State has all necessary regulatory permits and authorizations for construction of the

2   project.

3       104.    In accordance with the terms of the Section 4407 MOU, and Congress's

4   directive, Beth Pendleton owes the State the duty to immediately deliver the D-2

5   easement for the segment of the State's Shelter Cove Road project located in

6   Sections 8 and 17.

7

8                           **PRAYER FOR RELIEF**

9       WHEREFORE, the State of Alaska respectfully requests that this Court enter a

10  judgment in favor of the State and issue an order granting the following relief:

11      1.      Declaring that SAFETEA-LU § 4407 consummated a reciprocal exchange

12  of easements between the Parties, which left the Forest Service no discretion to

13  indefinitely withhold or deny the issuance of recordable documentation of a

14  transportation and utility easement connecting the communities of Southeast Alaska

15  along the corridors depicted on Map 92337;

16      2.      Declaring that the project's D-1 easements, issued pursuant to the terms of

17  the Section 4407 MOU, authorized activities necessary or incident to highway and

18  utility planning, design and environmental review processes in a 300-foot-wide floating

19  easement that could be located anywhere within the square-mile sections listed on each

20  D-1 easement;

21      3.      Declaring that the Parties' 2013 revision of the D-1 easement to better

22  accommodate the siting and development of the project was consistent with the

23

24

25

26

*SOA v. USFS and Beth Pendleton*                    1:16-cv-00018-SLG
COMPLAINT                                           Page 35 of 36

ATTORNEY GENERAL, STATE OF ALASKA
Dimond Courthouse
PO Box 110300, JUNEAU, ALASKA 99811
PHONE (907) 465-3600

purposes of SAFETEA-LU § 4407 and the Section 4407 MOU to connect the communities of Southeast Alaska with transportation and utility infrastructure;

4.    Declaring that the Forest Service is required to issue a D-2 easement for any highway or utility project linking the communities of Southeast Alaska depicted along a Map 92337 transportation and utility corridor if the proposed transportation or utility project has all necessary construction permits and authorizations from other state and federal agencies;

5.    Compelling the Forest Service's Regional Forester to issue the D-2 easement for the one-mile segment of the State's Shelter Cove Road project that is located in Sections 8 and 17 and on National Forest System lands;

6.    Providing any other relief that the Court deems just and proper; and,

7.    Awarding the State of Alaska its costs and expenses, including reasonable attorneys' fees.

DATED:  December 13, 2016.


JAHNA LINDEMUTH
ATTORNEY GENERAL


By:    /s/Sean P. Lynch
       Sean P. Lynch
       Assistant Attorney General
       Alaska Bar. No. 0710065

*SOA v. USFS and Beth Pendleton*                    1:16-cv-00018-SLG
COMPLAINT                                            Page 36 of 36
Case 1:16-cv-00018-RRB   Document 1   Filed 12/13/16   Page 36 of 36