DEAN K. DUNSMORE
U.S. Department of Justice
Environment & Natural Resources Division
C/O Office of U.S. Attorney
222 W 7th Ave, #9, Rm 253
Anchorage, Alaska 99513-7567
Telephone: (907) 271-5071
Facsimile: (907) 271-1505
Email: dean.dunsmore@usdoj.gov

Attorney for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| STATE OF ALASKA, | ) |
| | ) CASE NO. 1:16-cv-00018-RRB |
| | ) |
| Plaintiff, | ) |
| | ) DEFENDANTS' RESPONSE TO |
| v. | ) PLAINTIFF'S PRINCIPAL |
| | ) BRIEF IN SUPPORT OF |
| UNITED STATES FOREST SERVICE, | ) MOTION FOR SUMMARY |
| and DAVID SCHMID, Regional Forester | ) JUDGMENT |
| | ) |
| Defendants. | ) |
| _____ ) | |

Defendants United States Forest Service and David Schmid, Regional

Forester, United States Forest Service, Alaska Region, oppose Plaintiff's Principal

Brief in Support of Motion for Summary Judgment, Doc. No. 105 ("Pl.'s Br.").[1]

---

[1] Briefing in this action is proceeding pursuant to D.Ak. L.R. 16.3 for actions

STATE OF ALASKA v. U.S. FOREST SERVICE
Case No. 1:16-CV-00018-RRB          1

Plaintiff's motion should be denied and this action dismissed for lack of jurisdiction because Plaintiff has received the Shelter Cove Road easement it sought, and this action is therefore moot. The only "relief" this Court could now grant would be an impermissible an advisory opinion. Even if the Court had jurisdiction over this action, Plaintiff's motion should be denied because the State seeks to require the future issuance of easements to it (which it has not even yet requested) beyond what Congress has granted in the applicable statute.

The Court succinctly summarized this case in its Notice of Intent to Dismiss (Doc. No. 92) at 2-3. The Forest Service issued a Special Use Permit to the State for construction of a portion of a road known as the Shelter Cove Road. The State, however, had sought an easement pursuant to Section 4407 of the Safe, Accountable, Flexible, Efficient Transportation Equity Act, A Legacy for Users ("SAFETEA-LU") of August 10, 2005, Pub. L. No. 109-59, 119 Stat. 1144, 1777, *as amended* on December 4, 2015 *by* Fixing America's Surface Transportation Act, Pub. L. No. 114-94 § 1446(c), 129 Stat. 1312, 1438,[2] ("FAST Act") not a

---

seeking judicial review of agency actions under the Administrative Procedure Act, 5 U.S.C. §§ 701-706. Since Plaintiff's motion was filed on November 9, 2018, proceedings are pursuant to Rule 16.3 prior to the amendments to that rule that became effective December 7, 2018.

[2] Hereinafter referred to as "Section 4407."

STATE OF ALASKA v. U.S. FOREST SERVICE
Case No. 1:16-CV-00018-RRB          2

Special Use Permit. On April 20, 2018, the Forest Service issued the Section 4407 easement sought by the State. Defs.' Notice of Admin. Action (Doc. No. 84) and Exs. 1 & 2 thereto. Plaintiff no longer seeks any specific relief with respect to the Shelter Cove Road. Pl.'s Br. 42.[3] However, Plaintiff seeks a judgment declaring that, with respect to any easements granted to it by Section 4407 in the future:

> 1) the 300-foot-wide planning easement is not fixed at any particular location, but may float within the square-mile sections identified in each D-1 easement; and 2) the D-1 easements may be amended, without location restrictions, to accommodate the environmental permitting and development of a transportation or utility facility connecting [any of] the communities of southeast Alaska [depicted on the map].

Id. at 33.[4] The issue presented by Plaintiff's motion is, therefore, one of statutory interpretation -- what Section 4407 did or did not grant. As will be shown herein, Plaintiff's requested relief should be denied because Section 4407 only grants the easements specifically shown on the map referenced in the statute.

---

[3] Pursuant to D.Ak. L.R. 7.4(b)(2), the references herein to Pl.'s Br. are to the page "assigned by the CM/ECF System." These are different than the pagination the State placed on its document.

[4] Defendants understand "square-mile section" to refer to the square mile 640-acre tracts in the standard public lands surveys known as a "section," and by within that section Plaintiff means that the easements granted by Section 4407 include any location within the section in which the easement shown on the Map 92337 referenced in Section 4407 is located. Map 92337 does not shown sections, so that these would have to be derived from another source.

The Court previously concluded that this action was not moot. Order Granting Pl.'s Mot. to Augment the Admin. R. (Doc. No. 99). Defendants respectfully request that the Court revisit that determination as Plaintiff explicitly seeks judicial review of an agency action (i.e., the now superseded denial of the State's easement application) before the FAST Act's amendment of Section 4407 on December 4, 2015.

## ARGUMENT

## I. ANY ACTION SEEKING A JUDICIAL INTERPRETATION OF SECTION 4407 IS MOOT AND SEEKS A PROHIBITED ADVISORY OPINION

The Court previously concluded that this action was not moot because there were still valid disputes between the parties….". Order Granting Pl.'s Mot. to Augment the Admin. R. at 1. The Court did not identify those disputes. A review of Plaintiff's claims, however, as further explicated in its summary judgment motion, demonstrates that no justiciable disputes remain.[5]

When Plaintiff filed this case, it explicitly described its action as seeking only a judgment for its "right to use a transportation and utility easement granted

_____

[5] Further, all decisions of the trial courts are subject to revision by the courts until judgment has been entered. *United States v. Smith*, 389 F.3d 944, 949 (9th Cir. 2004); *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 888 (9th Cir. 2001). Therefore, the Court is not bound by its prior order.

by Congress under Section 4407…for the State's Shelter Cove Road project," and "defendants' decision to deny issuance of the Section 4407 easement for the construction and operation of the State's Shelter Cove Road. . . ." Compl. for Declaratory and Injunctive Relief 1-2 (Doc No. 1). However, since that easement has now been issued, Plaintiff agrees that "there is no longer any reason to more particularly explore the Forest Service's decision to deny the D-2 easement for the Shelter Cove Road project."[6]  Pl.'s Br. 37. This statement is an explicit acknowledgement that the basis for Plaintiff's action and the very relief it sought no longer exists. Therefore, there is no longer an actual case or controversy as to that particular legal right. Plaintiff's action is moot. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citing *Alvarez v. Smith,* 558 U.S. 87, 93 (2009)).

Further, the issuance of a supervening action, or a subsequent final agency action, moots claims regarding a preceding action. *See Aluminum Co. of Am. v. Adm'r, Bonneville Power Admin.*, 175 F.3d 1156, 1163 (9th Cir. 1995) (holding

---

[6] A September 2006 Memorandum of Understanding (hereinafter "MOU") entered between the State of the Forest Service provided for two types of easements to be issued by the Forest Service; an easement for planning purposes that has come to be known as a D-1 easement, and an easement for actual construction that is referred to as a D-2 easement. Administrative Record document AR 1, Part D at pages 2-3. Sample D-1 and D-2 easements are Attachments B and C to the MOU at pages 10-23. On January 11, 2018, the Administrative Record was filed on an external hard drive (Document No. 61), and will be referred as "AR."

that plaintiffs' NEPA (National Environmental Policy Act) claims were stale because a subsequent EIS (environmental impact statement) was prepared and the Court could "grant no relief that would 'undo' operation of the [previous EIS]"); *Grand Canyon Trust v. U.S. Bureau of Reclamation,* 691 F.3d 1008, 1017 (9th Cir. 2012), *as amended* (Sept. 17, 2012) ("We have held that the issuance of a superseding BiOp [biological opinion] moots issues on appeal relating to the preceding BiOp."); *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1124 (9th Cir. 1997) ("the biological opinion in the present case has been superseded by the 1995 Biological Opinion . . . any challenge to the 1994–1998 Biological Opinion is moot." (Citations omitted); *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560-61 (9th Cir. 2000) (claim that Forest Service failed to prepare a supplemental EIS mooted when the agency subsequently prepared the document before the Court's ruling); *Scott v. United States*, No. CV-08-0138-E-BLW, 2009 WL 482893, at *7 (D. Idaho Feb. 24, 2009), *aff'd*, 366 F. App'x 776 (9th Cir. 2010) (subsequent agency action mooted any challenge to previous agency action). Here, the supervening action is precisely the easement Plaintiff sought; the denial of which is the subject of this action. Compl. for Declaratory Relief & Injunctive Relief (Doc. No. 1) at 1-2. The Forest Service's subsequent action--issuing the easement at issue in 2018 for the Shelter Cove Road—rendered

the State's claim moot.

Even if Plaintiff had not already received the relief sought in its Complaint, for the reasons that follow, any claim seeking an interpretation of or review of the Forest Service's application of Section 4407 prior to its amendment in the FAST Act is moot. Given Plaintiff's current description of its action, Defendants will also show that there is no current live case or controversy regarding the application of Section 4407 as amended by the FAST Act.

**A. Any claim pertaining to the Forest Service's interpretation of Section 4407 after the FAST Act amendment is moot because the Court may no longer grant the relief Plaintiff sought**. Defendants have already shown above that the issuance on April 20, 2018,[7] of the Section 4407 easement for the Shelter Cove Road project granted the precise relief Plaintiff sought in this action. Plaintiff also concedes that this has obviated the need to compel the Forest Service to issue that easement. Pl.'s Br. 42 ("there is no longer any reason to more particularly explore the Forest Service's decision,"). With that concession, and for the reasons previously stated, Defs' Resp. to Mot. for Order Augmenting the Admin. R. (Doc. No. 97) at 9-18, this action and any claim to entitlement to an easement for the

---

[7] Exhibits 1 and 2 (Doc. Nos. 84-1 & 84-2) to Defendants' Notice of Administrative Action (Doc. No. 84-1).

Shelter Cove Road project under Section 4407 as amended has been rendered moot. See *Oregon Nat. Res. Council, Inc. v. Grossarth*, 979 F.2d 1377, 1379 (9th Cir. 1992) (after Forest Service cancelled planned timber sale, controversy concerning that sale was not yet ripe for adjudication, despite Plaintiffs' claim that another sale would be offered, where "the nature and effect of that sale cannot yet be assessed.")

What Plaintiff now effectively seeks is an advisory opinion. It seeks a classic "what if" ruling: a decision that if a new dispute were to arise over Plaintiff's entitlement at a different location to a Section 4407 easement, the statute should be interpreted as Plaintiff contends it should be. It does not, however, show that there is any existing dispute or request for a Section 4407 easement. The Federal courts do not have jurisdiction to render advisory opinions. *Sierra Club v. Morton*, 405 U.S. 727, 732 n.3 (1972) ("Congress may not confer jurisdiction on Art. III federal courts to render advisory opinions" (citations omitted); *United Pub. Workers of Am. v. Mitchell*, 330 U.S. 75, 89 (1947)("As is well known the federal courts established pursuant to Article III of the Constitution do not render advisory opinions.").

The Forest Service agrees that Section 4407 as amended provides for the granting of the easements shown on Map 92337, and that no environmental

analysis is required by NEPA (the National Environmental Policy Act, 42 U.S.C. §§ 4321-4370f). Doc. No. 84-1 at 1. With respect to the Shelter Cove Road Project, the Forest Service has granted Plaintiff the precise easement it applied for. Thus, there is no live issue remaining as to sole subject of this litigation.

There may never be a dispute as whether the lands sought in any future application by the State fall within the designated easement corridor on Map 92337. Plaintiff does not identify any pending or impending request for a Section 4407 easement. Until a request is actually made and the Forest Service has considered it, only a hypothetical possibility of such a dispute exists, and Plaintiff is clearly seeking an advisory opinion. *Cf. Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (alterations in original) (citation omitted) (to establish standing, "threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient.").[8]

**B. Any claim pertaining to Section 4407 prior to December 4, 2015 amendment is moot**. Plaintiff is very explicit. Its complaint seeks judicial review

---

[8] This is similar to the problem this Court addressed regarding the Juneau Access Improvement Project. This Court concluded then that it could not determine if the action the State proposed to undertake was subject to its injunction until the easement had been "reduced to a specific right-of-way or easement." Exhibit 1 at 6; Exhibit 2 at 3, hereto. Just as this Court could not determine if an easement had or had not been authorized in that litigation, the same specificity is necessary for any review in this case.

STATE OF ALASKA v. U.S. FOREST SERVICE
Case No. 1:16-CV-00018-RRB          9

of the Forest Service's initial – and now superseded – denial of a request for an easement:

> July 16, 2015 decision to deny the State's request for a D-2 easement, which was based upon the Forest Service's 'differing assumptions and interpretations articulated in the Forest Service's March 21, 2014 denial of the same easement.

Pl.'s Br. 24-25. Plaintiff now states that "there is no longer a reason to more particularly explore the Forest Service's March 21, 2014 decision…." *Id.* at 42. Therefore, this leaves as Plaintiff's sole remaining claim review of the Forest Service's July 16, 2015 decision.

Initially it should be noted that Plaintiff's action was filed after Section 4407 was amended. Thus, as to the statute as originally enacted, this action was moot when filed, and the usual potential exceptions to the mootness doctrine do not apply. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 109 (1998); *Pac. Nw. Generating Coop. v. Bonneville Power Admin*., 698 F.3d 774, 794 (9th Cir. 2102), *both quoting Renne v. Geary*, 501 U.S. 312, 320 (1991) ("'[T]he mootness exception for disputes capable of repetition yet evading review…will not revive an a dispute that became moot before the action commenced.'")

There can be no dispute that actions taken on July 16, 2015, and March 21, 2014, both occurred before the FAST Act amended Section 4407 on December 4, 2015. Therefore, those two decisions would be reviewed on the language of

Section 4407 prior to its December 2015 amendment.

Section 4407 of SAFETEA-LU as originally enacted read in full as follows:

Notwithstanding any other provision of law, the reciprocal rights-of-way and easements identified on the map numbered 92337 and dated June 15, 2005, *are hereby enacted into law*

Pub. L. No. 109-59, 119 Stat. 1144, 1777 (emphasis added). As amended on December 4, 2015, Section 4407 now reads in full:

Notwithstanding any other provision of law, the reciprocal rights-of-way and easements identified on the map numbered 92337 and dated June 15, 2005, *are granted*.

Pub. L. No. 114-94 § 1446(c), 129 Stat. 1312, 1438 (emphasis added). The change was the deletion of the phrase "hereby enacted into law" and the substitution of the word "granted." As set forth in Part II below, this change was significant, because granted has a clear meaning, and grants by the United States are subject to long-established rules of strict construction.

"A statutory change . . . is usually enough to render a case moot[.]" *Native Vill. of Noatak v. Blatchford*, 38 F.3d 1505, 1510 (9th Cir. 1994); *accord*, *Log Cabin Republicans v. United States*, 658 F.3d 1162, 1166 (9th Cir. 2011). This rule has routinely been applied not only in cases asserting direct statutory challenges to the prior statutes, but also to find challenges to administrative actions made by implementing entities prior to enactment of a statutory change to be moot. *Rocky*

Case 1:16-cv-00018-RRB   Document 116   Filed 04/02/19   Page 11 of 27

*Mountain Farmers Union v. Corey*, 913 F.3d 940, 949 (9th Cir. 2019)(fuel standards regulations of the California Air Resources Control Board); *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1195 (9th Cir. 2000) (admissions decisions by a law school);[9] *Newport Fishermen's Wives, Inc. v. U.S. Coast Guard*, No. 6:14-cv-1890-MC, 2015 WL 1951751, at *4 (D. Or. Apr. 29, 2015) (Coast Guard decision to close an air station prior to amendment of statute that kept it at least temporarily open). Applying that principle to challenges to agency actions under a prior statutory provision is especially applicable here. The Court is to presume that the Forest Service will henceforth apply the statute as amended in December 2015, and not as originally enacted. *Fed. Commc'n Comm'n v. Schreiber*, 381 U.S. 279, 296 (1965)("it runs contrary to the presumption to which administrative agencies are entitled—that they will act properly and according to law."); *accord Kohli v. Gonzales*, 473 F.3d 1061, 1068 (9th Cir. 2007), and cases

---

[9] The court also stated in *Smith*:

> Smith argues that *Noatak* can be distinguished because it involved the repeal of a statute that was being challenged. Smith is correct, but that is a distinction without a difference. As other courts have said, the real point is that a new statutory enactment has removed the basis or need for relief. *See Cook Inlet Treaty Tribes v. Shalala,* 166 F.3d 986, 990 (9th Cir.2000); *Defenders of Wildlife, Inc. v. Endangered Species Scientific Auth.,* 725 F.2d 726, 732 (D.C.Cir.1984); *New Mexico ex rel. New Mexico State Highway Dep't. v. Goldschmidt,* 629 F.2d 665, 667–68 (10th Cir.1980).

referenced therein. Even without this presumption, but especially with it, Plaintiff's summary judgment motion offers no reason to believe that the Forest Service is likely to return to and apply its interpretation of Section 4407 as it was originally enacted. That is what the Court would have to find in order for this action not to be moot. *Log Cabin Republicans*, 658 F.3d at 1167; *Village of Noatak*, 38 F.3d at 1510.

The existing record contains nothing that would support a finding that the agency intends to flout the law and, to the contrary, demonstrates that the Forest Service has changed its conduct in conformance with the amendment. When the Forest Service issued the Section 4407 easement to Plaintiff, it was specifically issued pursuant to the statute "as amended by section 1446(c) of P.L. 114-94." Letter of April 20, 2018, to Comm'r Mark Luiken, Doc. No. 84-1, at 1.[10]  In addition, a recent document extending the Memorandum of Understanding ("MOU") for implementation of Section 4407, attached as Exhibit 3 hereto, states the parties' intention to extend the MOU for purposes of "granting the rights of ways and easements described in Section 4407 . . . *as amended by section 1446(c) of* Pub. L. No. 114-94, 129 Stat. 1312, 1438)." Ex. 3 at 2 (emphasis supplied).

---

[10] This letter was attached as Exhibit 1 to Defendant's Notice of Administrative Action (Doc. No. 84).

Consequently, there is every reason to believe the Forest Service will not in the future be applying or issuing any easements under Section 4407 as amended and not as originally enacted. Therefore, any action for review of the Forest Service's implementation of Section 4407 prior to its amendment in December 2015 should be found to be moot and dismissed.

## II. EVEN IF THE COURT WERE TO REACH THE MERITS, DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS -- PLAINTIFF SEEKS TO HAVE THE COURT IMPROPERLY EXPAND THE SCOPE OF THE EXPRESS GRANT IN SECTION 4407

Plaintiff seeks herein a judgment declaring that, with respect to the easements granted to it by Section 4407:

> 1) the 300-foot-wide planning easement is not fixed at any particular location, but may float within the square-mile sections identified in each D-1 easement; and 2) the D-1 easements may be amended, without location restrictions, to accommodate the environmental permitting and development of a transportation or utility facility connecting the communities of southeast Alaska.

Pl.s' Br. 33. Neither of these provisions appear in Section 4407. Further, neither of them appear on the Map 92337, AR 178 at 1215,[11] referenced in Section 4407.

---

[11] Plaintiff admits that this is the Map 92337 referred to in the statute. Pl.'s. Br. 11. A copy of Map 92337 is attached as Exhibit 4 hereto. A full size conventional copy of this map and an electronic copy was filed by the State and available to the Court in the record in *Southeast Alaska Conservation Council v. Federal Highway Administration*, No. 1:06-cv-009, (Doc. Nos. 172, 174).

STATE OF ALASKA v. U.S. FOREST SERVICE
Case No. 1:16-CV-00018-RRB          14

Plaintiff's contention is that it has been granted easements that are not within the yellow line shown in the "[l]egend" of Map 92337 as "Proposed Transportation & Utility Corridor." Pl.'s Br. 30. The only limitation on this grant under Plaintiff's view appears to be that the requested easement must "connect the communities of southeast Alaska." The proffered interpretation Plaintiff advances violates several well established rules of statutory construction because it (1) is contrary to the clear language of the statute; (2) rewrites the statute to add words and conditions not placed there by Congress; (3) is not supported by and is contrary to the only controlling legislative history; and (4) is contrary to the established rules for the interpretation of grants from the United States. In addition, Plaintiff's interpretation is unreasonable because it would result in the map having created no limitations on the location of easement, when both the presence of lines and the statutory text clearly indicate Congress' intent to impose geographic limitations. If Congress had intended that Section 4407 require the Forest Service to grant easements as needed to connect the communities in southeast Alaska without placing any limits on where the easements it was granting were to be located, a map would not have been needed to accomplish that intent.

The first and primary rule of statutory construction is that the clear, plain, and unambiguous language of a statute itself is to be applied and is controlling.

*J.B. v. United States,* 916 F.3d 1161, 1167 (9th Cir. 2019); *Diaz-Jimenez v. Sessions*, 902 F.3d 955, 960 (9th Cir. 2018); *Olympic Forest Coal. v. Coast Seafoods Co.*, 884 F.3d 901, 905 (9th Cir. 2018). The traditional tools of statutory construction are used to determine whether Congress addressed the question presented, and, if so, the expressed intent of Congress controls. *Id.* Here that language is clear. Section 4407 grants "the reciprocal rights-of-way and easements identified on the map numbered 92337 and dated June 15, 2005."[12] The rights of way shown on Map 92337 for a Proposed Transportation & Utility Corridor are explicitly depicted by yellow lines. Land outside those lines would not be within the depicted corridors. This strict reading of the statute and Map 92337 is required by another rule of statutory construction. It is presumed that Congress expects its statutes to be read in conformance with Supreme Court precedents. *United States v. Wells*, 519 U.S. 482, 495 (1997).

To the extent the Court finds that there is any ambiguity, Plaintiff would also lose; the Supreme Court has held that grants of land by the United States are "subject to the general rule of construction that any ambiguity in a grant is to be resolved favorably to a sovereign grantor – 'nothing passes but what is conveyed in clear and explicit language.'" *Great N. Ry. Co. v. United States*, 315 U.S. 262, 272

---

[12] Pub. L. No. 114-94 § 1446(c), 129 Stat. 1312, 1438.

(1942), quoting *Caldwell v. United States*, 250 U.S. 14, 20 (1919); *accord Watt v. W. Nuclear Co.*, 462 U.S. 36, (1983). Any inferences are to be "resolved not against but for the government." *Great N. Ry. Co.*; *accord Andrus v. Charlestone Stone Products Co., Inc.*, 436 U.S. 604, 617 (1973),("It has long been established, when grants to federal lands are at issue, any doubts 'are resolved for the Government, not against it.'") (quoting *United States v. Union Pac. R. Co.*, 353 U.S. 112, 116 (1957)). Therefore, pursuant to a strict construction of the clear language of the Section 4407, nothing outside the yellow lines on Map 92337 of the designated "Proposed Transportation & Utility Corridor" passed to or was intended to pass to Plaintiff. The State's request that the court find that the easements be permitted to "float" or otherwise lie anywhere outside the yellow line on Map 92337 should be rejected.

In addition, even if the statute were not clear,[13] the limitation of the conveyance to only an easement within the yellow line is also consistent with the limited legislative history of Section 4407 as amended -- S. Rep. No. 114-80 at 23-24:

---

[13] *J.R.*, 916 F.3d at 1167 (only if the statute "reveals ambiguity may we turn to extrinsic evidence such as legislative history.'" (quoting *Yokeno v. Sekiguchi*, 754 F.3d 649, 653 (9th Cir. 2014)).

*Sec. 4001. Technical corrections*

The technical amendment to this section cures a perceived defect and now will allow the exchange of all remaining reciprocal easements to continue. As soon as possible, the Committee intends the Secretary of Agriculture (Secretary) to prepare and deliver to the State of Alaska an easement for the construction and operation of each highway *located in a transportation and utility corridor identified on Map 92337* where the State of Alaska has already secured all necessary Federal and State permits for the construction of each highway facility. The Secretary of Agriculture is encouraged to participate as a cooperating agency in the environmental analysis and permitting of the remaining State highways to be *located in Map 92337's transportation and utility corridors* linking the communities of Southeast Alaska. The Committee intends that the Secretary of Agriculture will not withhold or deny the issuance of an easement for a proposed transportation or utility project that otherwise has all necessary construction permits and authorizations from other State and Federal agencies.

SOA at 0642-53 (emphasis added).[14] The critical language is that the Secretary is to deliver easements for "each highway *located in a transportation and utility corridor identified on Map 92337*." (Emphasis added.) That is, it must be located "in" the yellow line on Map 92337, and not somewhere near that yellow line or somewhere "within the square-mile sections" of where that line appears on Map 92337. It must be "in."

---

[14] SOA refers to the "Supplemental Administrative Record" filed by Plaintiff on compact disc on August 18, 2018 (Doc. No. 100).

Plaintiff relies on materials, and arguments that the State and the Forest Service discussed and proposed language for legislation that would not have been as limited. These are not legislative history.[15] First, there is no showing that either the Senate or House of Representatives as a whole was aware of the materials that Plaintiff relies upon; therefore, they carry little, if any, weight. *Mont. Wilderness Ass'n v. U.S. Forest Serv.*, 655 F.2d 951, 956 (9th Cir. 1981). Further, what the parties discussed and proposed is irrelevant because it is what Congress enacted that matters, not what Plaintiff or the Forest Service may have proposed be enacted. Therefore, Plaintiff's arguments as to what the parties had originally envisioned the legislation to accomplish are irrelevant to the issue before the Court. It is the intent of Congress that is at issue, and that is set forth both in the language of the enacted statute, and the sole controlling legislative history—the Senate committee report. Committee reports for enacted legislation, of which here we have only S. Rep. No. 114-80, are controlling legislative history. *Garcia v. United States*, 469 U.S. 70, 76 (1984); *Zuber v. Allen*, 396 U.S. 168, 186 (1969); *N. Cal. River Watch v. Wilcox*, 633 F.3d 766, 775 (9th Cir. 2011). As already shown, that report shows the intent to limit the conveyances to lands for a highway within the

---

[15] The negotiations between the Plaintiff and the Forest Service over the MOU for implementing Section 4407 are also not legislative history.

yellow line on Map 92337.

Plaintiff's request to expand the Section 4407 grant beyond the defined and depicted yellow line on Map 92337 would violate another tenet of statutory construction. Courts may not write into a statute that which Congress left out, *United States v. Hoflin*, 880 F.2d 1033, 1038 (9th Cir. 1989), or rewrite a statute that they may feel is susceptible to improvement. *Envtl. Prot. Agency v. EME Homer City Generation, L.P.*, 572 U.S. 489, 508-09 (2014 ("a reviewing court's 'task is to apply the text [of the statute], not to improve upon it.'") (quoting *Pavelic & LeFlore v. Marvel Entm't Grp., Div. of Cadence Indus.*, 493 U.S. 120, 126 (1989)); *Badaracco v. Comm'r of Internal Revenue*, 464 U.S. 386, 398 (1984). However, that is what Plaintiff would have the Court do, not only to the language of Section 4407, but also to Map 92337.

Plaintiff states that the legend of an earlier (2004) version of this map contained a disclaimer stating that the map only showed approximate location of the easements and urges the Court to consider this in light of Plaintiff's argument that the location of the easements should float. However, as Plaintiff concedes, Congress removed this disclaimer from the June 15, 2005 Map 92337 referenced in Section 4407. Pl.'s Br. 10-11. That change supports Defendants', not Plaintiff's, interpretation. The presumption is that Congress "acts with deliberation," *United*

*States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985),  and "intended what it enacted." *U.S. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980).

Plaintiff also contends that easements such as those provided for in Section 4407 should be interpreted as only authorizing the granting of easements between communities, but not as defining the locations of the easements. Pl.'s Br. 29-30. The two cases referenced by Plaintiff, *Shultz v. Dep't of Army,* 10 F.3d 649 (9th Cir. 1993), and *Dillingham Commercial Co. v. City of Dillingham*, 705 P.2d 410 (Alaska 1985), do not support this contention for they involved roads authorized and actually constructed pursuant to Revised Statute 2447 ("RS 2477"). RS 2477 provided that "the right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted." *Kane Cnty. v. United States*, 772 F.3d 1205, 1209 (10th Cir. 2014); *Adams v. United States*, 3 F.3d 1254, 1257 (9th Cir. 1993).[16] RS 2477 did not contain any express geographic limitation comparable to that found in Section 4407 limiting the conveyances to "the reciprocal rights-of-way and easements identified on the map numbered 92337," or the specific depiction by the yellow line of the proposed transportation and utility corridors like that found on Map 92337. Section 4407 and the lines that represent the potential easements are not an authorization of a general point A to point B

---

[16] RS 2477 was repealed in 1976. *Id.*

conveyance, but of a designated corridor. Since the easements granted by Section 4407 are to be strictly construed, Plaintiff's attempt to re-write that statute should be rejected.

Plaintiff's contention, Pl.'s Br. 35-36, that Section 4407 should also be treated like nineteenth century railroad grants, should also be rejected. The cases on which Plaintiff relies, *Great N. Ry. Co. v. United States*, 315 U.S. 262, 271 (1942); and *Noble v. Union River Logging R. Co.*, 147 U.S. 165, 166 (1893), involved implementation of the General Railroad Right-of-Way Act of 1875, or described the implementation of that act. *Marvin B. Brandt Revocable Trust v. United States*, 572 U.S. 93, 98 (2014). However, that statute contained specific wording as to the width of the rights-of-way granted, and provided for their location to be determined by actual construction or by the filing of a map in advance of construction. Congress could have similarly provided in Section 4407, but it did not. Instead as already shown, Congress designated by the yellow line on Map 92337 specific transportation and utility system corridors within which the easements by the United States were granted. Once again, the courts may not rewrite that statute.

Plaintiff's contentions to the effect that the Forest Service previously interpreted Section 4407 consistent with the State's current interpretation of the

statute is not correct. While there were discussions and negotiations between Forest Service and State personnel, the final decision as to what Section 4407 granted was made by the Regional Forester, Beth G. Pendleton. *See* the Letters of March 21, 2014, and July 16, 2015, Doc. Nos. 26-1 and 35-1, that are the decisions originally challenged by in this action.[17] Pl.'s Br. 24-25. In both instances, the decisions were driven by the determination that the requested easement was not within the rights-of-way identified or described in Map 92337. Doc. No. 26-1 at 2; Doc. No. 35-1 at 1. The issuance of the Section 4407 easement on April 20, 2018, was based on a "re-examination of the data … regarding the alignment of the Shelter Cove Road," and determination that the road "is within the Congressionally-designated easement area." Doc. No. 84-1 at 1. The final decision of the Forest Service was and has remained that the easements granted by operation of Section 4407 must be "within" a corridor designated on Map 92337. It is only the final decision of the agency that is reviewable, and that decision is not arbitrary and capricious simply because it overrules a contrary preliminary discussions, negotiations and conclusion by someone at a lower level within the agency. *Defs of Wildlife v. Zinke,* 856 F.3d 1248, 1262 (9th Cir. 2017), *citing Nat'l*

---

[17] The decision of April 20, 2018, (Doc. No. 84-1) to issue the Section 4407 easement was also made by Ms. Pendleton as the Regional Forester.

*Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 659 (2007).

The State also spends a significant portion of its brief arguing that emails and conversations between the parties during and after the negotiation of the MOU somehow override the plain language of the MOU. But the MOU, like Section 4407, does not refer to any sort of floating easement. Attachment B to the MOU, which is a form easement that implements paragraph D.1. of the MOU, designates an area for a legal description, and further refines that legal description by saying, "And as shown in the attached Easement Diagram titled "TITLE OF EASEMENT DIAGRAM" dated DATE OF EASEMENT DIAGRAM". The D-1 easements that have been issued do not depict blocks that would indicate that an easement may float anywhere within a specific section, but rather a route that should match the routes as depicted on Map 92337. *See* AR 20 at 097-0101 (2013 easement).

## III. THE FOREST SERVICE'S JULY 16, 2015 ACTION WAS FULLY CONSISTENT WITH ITS THEN-EXISTING LEGAL DUTIES

Plaintiff appears to contend that the Forest Service's July 16, 2015 decision to grant Plaintiff a permit for the Shelter Cove Road Project violated Senate Committee Report No. 114-80. Pl.'s Br. 17-20. Even if review of that action were not moot, Plaintiff's argument would have to be rejected. The Committee Report was published on July 15, 2015, and referred to an amendment of Section 4407 that was not enacted until December 4, 2015. Legislation is not amended by

Case 1:16-cv-00018-RRB   Document 116   Filed 04/02/19   Page 24 of 27

committee reports, which are not acts of Congress. *Cherokee Nation of Okla. V. Leavitt*, 543 U.S. 631, 646 (2005); *Nw. Envtl. Def. Ctr. v. Bonneville Power Admin.*, 477 F.3d 668, 883-84 (9th Cir. 2007).

## IV. PRIOR TO DECEMBER 4, 2015, SECTION 4407 DID NOT OPERATE AS A CONVEYANCE

If the Court had jurisdiction over Plaintiff's action for review of the Forest Service's actions prior to December 4, 2015, the Court should find that Section 4407 as originally enacted did not constitute a conveyance of any lands to Plaintiff.

Congress has conveyed lands in statutes by making grants *in praesenti*. *Noble v. Oklahoma City*, 297 U.S. 481, 567 (1936). However, as noted in that decision those statutes explicitly state that a right of way is hereby granted. Section 4407 as originally enacted, however, did not grant the referenced rights-of-ways and easements. Further, the MOU entered between the State and the Forest Service stated that the parties intended to use their best efforts to grant the identified rights-of-way and easements. AR 1 at 1. The MOU also recognized "that such rights will be granted consistent with their respective obligations to protect scenic, archaeological, recreation, and fish and wildlife values, resources and habitats on National Forest System lands and State of Alaska lands." *Id*. Thus, both the State and Forest Service recognized that there could be reasons why some of the depicted rights-of-way and easements might not be granted. This shows that at the

Case 1:16-cv-00018-RRB   Document 116   Filed 04/02/19   Page 25 of 27

time the MOU was signed in 2006, neither the State nor the Forest Service interpreted Section 4407 as either a grant or a mandatory requirement.

CONCLUSION

Plaintiff's motion for summary judgment should be denied because the Court lacks subject matter jurisdiction over this action. This action is moot, and Plaintiff also seeks an advisory opinion. If the Court had jurisdiction over this action, Plaintiff's motion would still have to be denied. Plaintiff seeks an interpretation and application of Section 4407 that is contrary to the clear language of the statute, and to the established rules for the strict construction of grants of federal land.

DATED this 2nd day of April 2019.

<div style="margin-left:40%">

 s/ Dean K. Dunsmore
DEAN K. DUNSMORE
U.S. Department of Justice
Environment & Natural Resources
Division
C/O Office of U.S. Attorney
222 W 7th Ave, #9, Rm 253
Anchorage, Alaska 99513-7567
Telephone: (907) 271-5071
Facsimile: (907) 271-1505
Email: dean.dunsmore@usdoj.gov

Attorney for Defendants

</div>

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 2nd day of April 2019, a copy of the

foregoing Defendants' Response to Plaintiff's Principal Brief in Support of Motion

for Summary Judgment and accompanying Exhibits were served electronically   by

means of the Court's ECF system on the following:

Sean P. Lynch

<u>s/ Dean K. Dunsmore     </u>
DEAN K. DUNSMORE

Case 1:16-cv-00018-RRB   Document 116   Filed 04/02/19   Page 27 of 27